IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| ADKINS ENERGY, LLC,<br>　　　　Plaintiff,<br><br>vs.<br><br>FARMLAND MUTUAL INSURANCE<br>COMPANY,<br>　　　　Defendant. | Case No. 04 C 50482<br><br>Magistrate Judge<br>P. Michael Mahoney<br><br>F I L E D<br><br>MAY 0 6 2009<br><br>MICHAEL W. DOBBINS<br>CLERK, U.S. DISTRICT COURT |

## MEMORANDUM OPINION AND ORDER

### I. Introduction

Before the court are Farmland Mutual Insurance Company's ("Farmland") motions to compel and to deem facts admitted. Both motions regard discovery requests propounded on Adkins Energy, LLC ("Adkins"). Adkins filed briefs in response to both motions, as well as a motion for a protective order in response to Farmland's motion to compel. The court heard oral arguments on all the motions on March 25, 2009.

### II. Farmland's Motion to Compel

Adkins owns and operates an ethanol processing plant, which produces distillers grains as a by-product. Distillers grains are a high protein supplement fed to livestock, and are more profitable to store and sell after they are dried (at which point they are known as dried distillers grains). A dryer used by Adkins to convert distillers grains into dried distillers grains caught fire

1

on or about December 13, 2002, and was damaged.

After the fire, Adkins made an insurance claim against its insurance provider, Farmland. Farmland requested that Adkins submit an estimate for the cost of repairing the fire damage. (Adkins' Resp. to Mot. to Compel 6.) Stanley Thompson, owner of Thompson Dehydrating, a manufacturer and servicer of dryers for the agricultural industry, provided Adkins with an estimate, which Adkins then provided to Farmland. (*Id.* at 4.) Adkins' insurance claim against Farmland is the subject of this lawsuit.

Separate from this lawsuit, Adkins participated in an arbitration with two other companies, Lurgi PSI ("Lurgi") and Ronning Engineering Company, Inc. ("Ronning"), regarding damages caused by the fire. It was Adkins' position at the arbitration that Lurgi and Ronning were responsible for the damage. Farmland was not present at that arbitration. The arbitration hearing was held before a panel of three arbitrators, at which time Adkins presented to the panel a demonstrative exhibit depicting an animation of the dryer's operation. Thompson testified at that hearing, and his testimony made references to the demonstrative exhibit. Ultimately, the arbitration panel found that neither Lurgi nor Ronning were responsible for the fire damage.

On November 6, 2008, Thompson testified at his deposition in the present case that, when he made the repair estimate for Adkins, he obtained pricing information from third parties. (*See id.* at 5; Farmland's Mot. to Compel ¶ 2.) Fact discovery in this case closed on January 15, 2009. (Court Doc. No. 109.) On January 20, 2009, two and a half months after the deposition, Farmland propounded a supplemental interrogatory and a supplemental document request on Adkins. The interrogatory states the following:

> Identify by vendor, description, date and amount each estimate, proposal bill, invoice or other documents reflecting or relating in any way to the values claimed by Adkins Energy, LLC for the repair, and/or replacement of any of the components of the dryer

2

> which are included in the claim. In lieu of answering this interrogatory, Adkins may
> provide copies of the documents which would respond to this interrogatory.

(Farmland's Mot. to Compel Ex. A.) The document request seeks the following:

> Copies of any and all estimates, proposals, bills, invoices, and other documents
> reflecting or relating in any way to the amounts claimed by Adkins for the repair
> and/or replacement of any of the components of the dryer which are included in the
> claim which is the subject of this lawsuit.

(*Id.* Ex. B.)

Farmland's motion to compel seeks two things: (1) production of the demonstrative exhibit used at the arbitration, and (2) responses to the supplemental discovery requests which were propounded on Adkins after Thompson testified at his deposition on November 6, 2008. Adkins objects to producing the exhibit, arguing that it is subject to the work product doctrine. Adkins further moves for a protective order "barring and prohibiting Farmland from using any [and] all demonstrative exhibits used by Adkins at the arbitration except and to the extent that Adkins may use or introduce such demonstrative exhibits at trial." (Adkins' Resp. to Mot. to Compel 6.) It also objects to the supplemental interrogatory and document request as untimely.

The court will first address Farmland's motion to compel production of the demonstrative exhibit. The work product doctrine is meant to "promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of the opponent." *Williams v. Musser*, 1995 U.S. Dist. LEXIS 784, at *5 (N.D. Ill. Jan. 23, 1995). Rule 26(b)(3) sets forth the limits of the work product doctrine: "[A] party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative" unless "(i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A).

3

Work product that contains the "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation" is outside the scope of discoverable materials altogether. *Fed. R. Civ. P.* 26(b)(3)(B).

Whereas disclosure of a privileged document to a third party waives attorney-client privilege, the same is not necessarily true regarding the work product doctrine. *Jumper v. Yellow Corp. et al.*, 176 F.R.D. 282, 287 n.5 (N.D. Ill. 1997). The work product doctrine may be waived "when the protected communications are disclosed in a manner which substantially increases the opportunity for potential adversaries to obtain the information." *Equity Residential et al. v. Kendall Risk Mgmt., Inc. et al.*, 246 F.R.D. 557, 564 (N.D. Ill. 2007); *Blanchard v. Edgemark Fin. Corp. et al.*, 192 F.R.D. 233, 237 (N.D. Ill. 2000); *c.f. Jumper*, 176 F.R.D. 287 n.5 (holding that a party did not waive the work product privilege where that party disclosed materials otherwise subject to the privilege to co-defendants during arbitration). "The question is whether the particular disclosure was of such a nature as to enable an adversary to gain access to the information." *Blanchard*, 192 F.R.D. at 237.

In this case, parties agreed at the March 25, 2009 hearing that the demonstrative exhibit was, at one time, subject to the work product doctrine. This court agrees. The exhibit is a tangible thing that was prepared in anticipation of litigation. But, Farmland argues that Adkins waived the privilege when it presented the exhibit at the arbitration hearing.

The arbitration in which Adkins took part with Lurgi and Ronning was adversarial in nature. Lurgi and Ronning did not share a common interest with Adkins. By disclosing the demonstrative exhibit at the arbitration hearing, Adkins made available the information in the exhibit to adversaries. This, in turn, substantially increased the opportunity for Farmland to gain access to the information. Because it made the exhibit available to adversaries, Adkins waived

4

the work product privilege to which the exhibit was otherwise subject.

Since Adkins waived the work product privilege with respect to the demonstrative exhibit, the exhibit is discoverable. Thus, the court grants Farmland's motion to compel production of the exhibit, and denies Adkins' motion for a protective order regarding that same exhibit. Because the court does not know what the other demonstrative exhibits are, and no other demonstrative exhibit was sought in Farmland's motion to compel, the court denies the remainder of Adkins' motion for a protective order without prejudice.

The court next addresses Farmland's motion to compel responses to the supplemental discovery requests propounded after Thompson testified at his deposition. If a party is going to present as evidence at trial the expert opinion of a witness under the Federal Rules of Evidence 702, 703, or 705, the party must disclose to the other parties the identity of that witness. *Fed. R. Civ. P.* 26(a)(2)(A). That "disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." *Fed R. Civ. P.* 26(a)(2)(B). That report must contain, *inter alia*, "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the data or other information considered by the witness in forming them; [and] (iii) any exhibits that will be used to summarize or support them[.]" *Fed. R. Civ. P.* 26(a)(2)(B)(i)–(iii).

Fact discovery in this case closed on January 15, 2009. Adkins' disclosures under Rule 26(a)(2)(A) were due February 18, 2009, and Farmland's Rule 26(a)(2)(A) disclosures were due on April 15, 2009. (Court Doc. No. 109.)

Counsel for Adkins stated at the March 25, 2009 hearing that Adkins had not disclosed any witnesses under Rule 26(a)(2)(A). If Thompson testifies at trial, he cannot testify under the

5

Federal Rules of Evidence 702, 703, or 705. Furthermore, counsel for Adkins stated at the hearing that Adkins does not control Thompson, and that Thompson had not been retained or specially employed to provide expert testimony in this case. Thompson was not paid for his November 6, 2008 deposition, and Adkins represented that it is not going to pay Thompson to testify at trial. Counsel for Adkins stated that, if anything, Adkins might "just rely on [Thompson's] deposition and exhibits" at trial. Although counsel for Adkins admitted that Thompson had been paid for his "general overall services," those services did not include giving expert testimony as a witness under Rule 26(a)(2). Adkins' representations at the March 25, 2009 hearing suggested that if Thompson testifies at trial, his testimony will apparently be in the capacity of a lay witness under the Federal Rules of Evidence 701.

Because Thompson is not a witness under Rule 26(a)(2), the discovery sought by Farmland in its supplemental discovery requests is within the scope of fact discovery. Therefore, the discovery requests are untimely because the fact discovery cutoff date was five days prior to the date that Farmland propounded the discovery requests. The motion to compel responses to the supplemental discovery requests is therefore denied.

### III. Farmland's Motion to Deem Facts Admitted

On October 13, 2008, Farmland propounded on Adkins its first request for admissions, which included 41 requests. (Farmland's Mot. to Deem Facts ¶ 1, Ex. A.) Request Number 1 states, "The law firm of Locke Lord Bissell & Liddell, LLP was previously named Lord Bissell & Brook. (Both firms will hereafter be referred to as 'Lord Bissell'.) [sic]." Request Numbers 2–41 each references one of three cases in which Adkins was involved in the past. Those three cases consist of two federal cases, *Neighbors for Good Neighbors, LLC v. Adkins Energy, LLC*, No. 03-C50194 (N.D. Ill. May 9, 2003) (referred to as the "NFGN Litigation") and *Adkins*

*Energy, LLC v. Lurgi AG*, No. 04-C08052 (N.D. Ill. Dec. 13, 2004), and a state case, *State of Illinois v. Adkins Energy, LLC*, case number 03-CH-76, which was filed in the Circuit Court of the Fifteenth Judicial Circuit of Illinois.

Sequentially, Request Numbers 2–41 follow a particular recurring pattern. Request Numbers 4–8 exemplify the pattern. It begins with a request for an admission that Adkins' counsel filed either a particular motion, a response to a motion, or a pleading in one of the above three cases. Request Number 4 states the following:

> On or about May 20, 2003 Lord Bissell[, Adkins' counsel,] filed on behalf of Adkins in the NFGN Litigation a document titled "Defendant's Response to Plaintiff's Motion for Preliminary Injunction and Request for Expedited Hearing". [*sic*] (This document will hereafter be referred to , [*sic*] the "Adkins Response to NFGN's Motion for Preliminary Injunction".) [*sic*]

(Farmland's Mot. to Deem Facts Ex. A.)

Then, Farmland copies a specific statement from that motion, response, or pleading and requests Adkins to admit that the motion, response, or pleading contains the statement. Request Number 5 states the following:

> On Page 2 of the Adkins Response to NFGN's Motion for Preliminary Injunction, Adkins through its attorneys, Lord Bissell stated: ["]This situation has occurred because Adkins did not know, and could not have known, that an outside contractor would install a flawed and unsafe dryer that must now be repaired and/or replace.["]

(Farmland's Mot. to Deem Facts Ex. A.)

Third, Farmland requests Adkins to admit that the copied statement from the document is true. Request Number 6 states, "The statement made by Adkins through its attorneys, Lord Bissell, recited [in] request 5 above was true." (Farmland's Mot. to Deem Facts Ex. A.) Fourth, Farmland requests Adkins to admit that, when it made the copied statement, it believed the statement to be true. Request Number 7 states, "At the time Adkins made the statement recited

7

in request 5 above through its attorneys, Lord Bissell, Adkins believed the state to be true." (Farmland's Mot. to Deem Facts Ex. A.) Finally, Farmland requests Adkins to admit that, when the statement was made, the attorney who signed the document believed the statement to be true. Request Number 8 states, "At the time Adkins made the statement recited in request 5 above through its attorneys, Lord Bissell, the attorney who signed the document believed the statement to be true." (Farmland's Mot. to Deem Facts Ex. A.)

To further illustrate the pattern and how it recurs throughout Farmland's Request to Admit, Request Numbers 9–13 read as follows:

> 9. On November 2, 2004, Lord Bissell filed, on behalf of Adkins in the NFGN Litigation, a document titled "Defendant's Response to Plaintiff's Renewed Motion for Preliminary Injunction and Motion for Rule to Show Cause." [*sic*] (This document is hereafter referred to as "Adkins Response to NFGN's Renewed Motion".) [*sic*]
>
> 10. On page 2 of Adkins Response to NFGN's Renewed Motion, Adkins, through its attorneys, Lord Bissell, stated: ["]A year later, Adkins began testing the equipment at the Lena plant in September 2002. However, the dryer that was supposed to dry the wet corn mash was riddled with problems from the start.["]
>
> 11. The statement made by Adkins through its attorneys, Lord Bissell, recited request 10 above was true.
>
> 12. At the time Adkins made the statement recited in request 10 above through its attorneys, Lord Bissell, Adkins believed the state to be true.
>
> 13. At the time Adkins made the statement recited in request 5 above through its attorneys, Lord Bissell, the attorney who signed the document believed the statement to be true.

(*Id.*)

One more illustration of the pattern may be useful. Requests numbers 14–19 refer to the second federal case, *Adkins Energy, LLC v. Lurgi AG*. They read as follows:

> 14. On December 13, 2004, Adkins filed suit against Lurgi AG in the United States District Court for the Northern District of Illinois, Western Division, as Court No.

8

04 C 8052. (Hereinafter referred to as "Lurgi Litigation".) [*sic*]

15. On December 29, 2004 Adkins filed its First Amended Complaint in the Lurgi Litigation. (Hereinafter referred to as the "Amended Complaint".) [*sic*]

16. In paragraph 30 of its original complaint and paragraph 32 of its amended complaint in the Lurgi Litigation, Adkins alleged: ["]On October 8, 2002, the Ronning dryer was tested. The emissions exceeded the amounts allowable in the IEPA Construction Permit and the amounts that Ronning guaranteed in Paragraph 1.09 of Specification No. 18145. Lurgi PSI was notified that the dryer failed to achieve the specified performance requirements.["]

17. The allegations recited in request [16] above were true.[1]

18. At the time Adkins filed its original and amended complaints in the Lurgi Litigation, Adkins believed that the allegations recited in request 16 above were true.

19. At the time Adkins filed its original and amended complaints in the Lurgi Litigation, the attorney who signed the pleading on behalf of Lord Bissell believed the allegations recited in request 16 above were true.

(*Id.*) Requests Numbers 20–41 continue in this pattern, each referring to one of the three cases.

On November 10, 2008, Adkins responded to Farmland's first set of requests to deem facts admitted. (Adkins' Resp. to Mot. to Deem Facts Ex. A.) It objected to the requests for a variety of reasons, including that Farmland had not attached the motions, responses, or pleadings to which it referenced in the requests.

On February 25, 2009, Farmland brought this motion to deem facts admitted regarding Request Numbers 1, 6–8, 10–14, 18–19, 21–31, and 35–39 from the first set of requests for admissions, claiming that Adkins' answers were insufficient. Adkins argues that requesting it to admit the allegations and statements made in documents and pleadings in other litigation is improper.

---

[1] To add to the confusion, Farmland's Request to Admit Number 17 actually read, "The allegations recited in request 13 above were true." This is almost certainly a typo, and should refer to request 16, not 13.

Under Rule 36, "A party may serve on any other party a written request to admit . . . the truth of any matters within the scope of Rule 26(b)(1) relating to facts, the application of law to fact, or opinions about either[.]" *Fed. R. Civ. P.* 36(a)(1)(A). The party upon whom a request for admission is served must either object or answer the request. *Fed. R. Civ. P.* 36(a)(4). A party may not object merely on the grounds that the request presents a genuine issue for trial. *Fed. R. Civ. P.* 36(a)(5).

If the party does not object, its answer must either admit the matter, deny the matter, or "state in detail why the answering party cannot truthfully admit or deny it." *Fed. R. Civ. P.* 36(a)(4). "The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." *Fed. R. Civ. P.* 36(a)(4).

If the requesting party believes that the responding party has answered insufficiently, it may move for the court to rule on the answer's sufficiency. *Fed. R. Civ. P.* 36(a)(6). If the court finds the answer insufficient, it may order the responding party to amend the answer. *Fed. R. Civ. P.* 36(a)(6). The court may also simply order the matter admitted. *Fed. R. Civ. P.* 36(a)(6).

Farmland's Request to Admit Number 1 states, "The law firm of Locke Lord Bissell & Liddell, LLP was previously named Lord Bissell & Brook. (Both firms will hereafter be referred to as 'Lord Bissell'.) [*sic*]." Adkins responded, "Adkins objects to this request because it is irrelevant, immaterial and inadmissible. Without waiving its objections, Adkins states that it has no personal knowledge and therefore can neither admit nor deny the request, but on information believes the statement is false."

Adkins answer is improper under Rule 36 and not helpful. The information sought may

10

be attainable through reasonable inquiry, and Adkins has an obligation to make that inquiry. After all, this was Adkins' previous counsel. Thus, with regard to Request Number 1, the court orders Adkins to either admit or deny the request. If it cannot due to lack of knowledge, it must state that it made a reasonable inquiry to acquire the necessary knowledge. It is quite possible that Adkins can gain the knowledge needed to answer this request by calling its counsel or previous counsel and simply asking.

Request Numbers 2–41 of Farmland's first set of requests to admit are unusual because they seek to enter as judicial admissions statements and allegations that were made in motions, responses, and pleadings filed in other cases. Judicial admissions occur when a party answers a request to admit, or when a party makes admissions in its pleadings. *Kohler v. Hindman, Inc. et al.*, 80 F.3d 1181, 1185 (7th Cir. 1996). Under Rule 8, parties "may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." *Fed. R. Civ. P.* 8(d)(2); *see also* 735 *Ill. Comp. Stat.* 5/2-613(b). Also, "[a] party may state as many separate claims or defenses as it has, regardless of consistency." *Fed. R. Civ. P.* 8(d)(3); *see also* 735 *Ill. Comp. Stat.* 5/2-613(b).

Further, Rule 11 provides that an attorney who presents a pleading, written motion, or other document to the court certifies that,

> to the best of that person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[,] . . . (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

*Fed. R. Civ. P.* 11(b)(3)–(4). Also, "a statement made in one lawsuit cannot be a judicial admission in another." *Kohler*, 80 F.3d at 1185 (finding that testimony during a deposition in a

11

state case could not be admitted as a judicial admission in a different federal case); *see also Granzow v. Eagle Food Ctrs., Inc.*, 27 F. Supp. 2d 1105, 1108 (N.D. Ill. 1998) (holding that statements made in past administrative filings were not judicial admissions in the subsequent federal lawsuit, and stating that "[e]ven if administrative filings were to be considered pleadings, then, the verified response [to the administrative filing] at issue here is from another proceeding and is therefore, under *Kohler*, not considered a judicial admission in the current case").

Request Numbers 2–41 are inappropriate. By requesting that Adkins admit allegations and statements made in motions, responses, and pleadings filed in past cases, Farmland seeks to transform those allegations and statements into judicial admissions in this case. This tactic undermines Rule 8, Rule 11, and the Seventh Circuit's holding in *Kohler*.

Rule 8 and the concept of notice pleading allow for inconsistent pleadings. This lets parties set forth every potential claim and defense at once, thereby serving the interests of judicial economy. If Farmland's requests to admit are allowed, they would stymie a party's willingness to set forth all of their claims or defenses because its pleadings would have a collateral estoppel effect on future litigation. Similarly, inconsistent factual and legal contentions are allowed under Rule 11 if they have evidentiary support or are warranted by existing law or evidence. Farmland's requests to admit would turn contentions into judicial admissions. This would undermine an attorney's ability to make contentions in the alternative, and then to explore the contentions based on facts not yet discovered.

Also, *Kohler* teaches that statements made in prior litigation are not automatically judicial admissions in future cases, *Kohler*, 80 F.3d at 1185, and Farmland's requests to admit would undermine that decision. By requiring Adkins to admit or deny the truth of statements quoted from pleadings and papers submitted in prior proceedings, those past statements have the effect
12

of judicial admissions in this proceeding. Thus, consistent with Rules 8 and 11, and the Seventh Circuit's decision in *Kohler*, the court will not order Adkins to further answer Requests Numbers 6–8, 11–13, 18–19, 21–23, 25–27, 29–31, 35, or 37–39 from Farmland's first set of requests to admit.

Request Numbers 10, 14, 24, 28, and 36, taken individually, do not suffer from the same infirmities as the others. These requests to admit do not ask Adkins to admit that a statement was true, or that Adkins or Adkins' counsel thought the statement to be true at the time it was submitted. These requests ask Adkins to admit that the particular statement quoted was in the referenced motion, response, or pleading. This is allowed under Rule 36, and is accomplished when a party admits the genuineness of a document. Indeed, in response to Farmland's second request to admit, Adkins admitted the genuineness of the documents at issue in Farmland's first request to admit. Compelling Adkins to admit to Request Numbers 10, 14, 24, 28, and 36 may be redundant, but the court nevertheless orders Adkins to answer these requests.

## IV. Conclusion

Based on the above analysis, the court grants in part and denies in part Farmland's Motion to Compel, and denies Adkins' Motion for Protective Order as it relates to the demonstrative exhibit sought by Farmland's Motion to Compel. The court denies without prejudice Adkins' Motion for a Protective Order as it relates to any other demonstrative exhibit. The court grants in part and denies in part Farmland's Motion to Deem Facts Admitted, and orders Adkins to respond to Request Numbers 1, 10, 14, 24, 28, and 36. The court orders that Adkins respond to all outstanding discovery consistent with this opinion by May 20, 2009.

ENTER:

[signature]

P. MICHAEL MAHONEY, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

DATE: 5/6/09